United States District Court
Middle District of Florida

FILED

Patrick D. Pearson
plaintiff

vs

Highest Oceans
(Sami Z Anani)
Nedco Properties
(Ned Nather)
Michael Rhodes
defendants

Amendment of Complaint

no. 8:12-cv-00657-MSS-MAP

Plaintiff proceeding pro se, and Forma Pauperis 28 USC § 1915

Plaintiff reinstates Defendants ~ Highest Oceans (Sami Z Anani) and Michael Rhodes pursuant to Local Rule 1.04(d) and Rule 15(2)(c) Federal Rules of Civil Procedure.

note: No defendant has yet to be served, Summons by US Marshals Service
Amending to renamed parties in similiar/succesive case no. 8:12 cv 606T 30 AEP.

Plaintiff also amends Relief requested (pg 7 IV) - for the following Monetary Damages.
However, plaintiff concedes at this date Consent to a Magistrate Judge's consideration of a Dispositive Motion, Verdict Being a Track II case.

Amd 1

Plaintiff, seeks an equitable outcome, settlement upon this cases merits.

Please see, at the conclusion of this amended complaint. Applicable case law, and supportive points and authorties.

I. Compensatory Damages

Defendants having current Foreclosure Lawsuit Litigation. complaint pgs (13,14). Having mismanaged assets. Defendants felt overburdened, compelled, and disregarding the laws, rights of others. Felt justified, under any guise - to target the easiest class (a handicapped, disabled) tenant, and neighbor who is also within class of disabled, and Living on a Limited Income. However Defendants in collusion, in continued increasing coersion, extortion for _profit_- attempt to evict Plaintiff [A Federally Protected Class] without due cause but profit motive.

Discrimination. Civil Rights violations under
USC Title 42 §3601 et seq, USC Title 42 §3604 et seq.

Ia. as well as in evidence violation of FHA, a disparate impact upon plaintiff (disabled) + neighbor (disabled) non-plaintiff.

Title VII Framework // Lapid-Laurel 284 F3d at 466.

Defendants claims to restrict burden upon guise (cause) major renovation - are Lies -

See evidence pg 9-12 Complaint Oct 4-2010 thru Nov 3, 2010
Major Renovation.

Amd 2

Amended complaint no 8:12-cv-657-MSS-MAP

Ib. Plaintiff is seeking Compensatory Damages in the amount of $50,000.00 dollars

II Punitive Damages
please see case Law S. Court 128v (at pg. 2607) notes [14][15]
Damages § 87.1   Included in Brief / Florida Statutes §768.72
§ 91.5   939 F.Supp 849 at 852 / 2A1 Fed Reporter 3d at 1340 notes [9,10]

Punitive Damages in the amount of $35,000.00

III. Special Damages
Federal Practice vol 19C
I Civil Liability
  a) acts constituting conspiracy
    1.1 conspiracy [complaint pg 7, pg 8
Collusion, in fact and in evidence from Owner (Sami Z. Anani)
Highest Ocean LLC - Immenant Foreclosure -
Upon Management letterhead demand for additional electric/rent tax revenue for profit / See pg 7 Complaint.
While advertising 28 March 2012, "All utilities and cable included.
Page 8 Another guise, emminent Eviction

Plaintiff is seeking special Damages in the amount of $17,250.00

Amd 3

Amended Complaint
case no. 8:12-cv-657-MSS-MJ

III Special Damages (cont)
 (a) points and authorities - Florida case law
 (b) Federal Rules Civil Procedure 8(a)
 (c) Throughout continued escalating demands, coersion psychological duress
  (i) mental suffering and emotional distress
      215 Fed Supp 2d at 1302 note [16], 1303 [17]
      48 Fed Supp 2d at 1364 note [4]

  Rules of Civil Procedure
      Rule 9(b).
  (i.i) Myers v Central Florida Investments CA 11 (Fla) 2010
      592 F3d 1201  award factors at pgs 1212-13 [notes 12-14]
      ∴ [emotional damages need not be supported by medical testimony in Florida]
      * see Hagan v Coca Cola Bottling Co. (Fla 2001)
        804 So2d 1234

IV   ALL Court Costs Incurred.

Plaintiff

Patrick D. Pearson
440 Sixth Street N-12 B
St. Petersburg, Florida 33701
tel. (727) 265-6748

*Patrick D. Pearson*   17 April 2012

Amd 4

Amendment of Complaint
case no. 8:12-cv-00657-MSS-MAP

Patrick D. Pearson
  plaintiff
- vs -
Highest Oceans LLC
Sami Z Anani
  et al
    defendants

Points and Authorities

the FHA. Defendants have imposed burdens on the creation of single-family homes for persons with disabilities that are not applicable to the non-disabled, and they have not justified this disparate treatment. Therefore, this Court find that plaintiff has established its claim of discrimination based upon disparate treatment.[5]

### 2. Disparate Impact

[9, 10] Plaintiff next contends that the undisputed facts show that defendants' Ordinance and conduct have a discriminatory disparate impact on persons with disabilities. In order to prevail on its disparate impact claim, plaintiff must demonstrate that the defendants' policies have a greater adverse impact on persons with disabilities than on non-protected persons, regardless of intent. *Marriott Senior Living Services, Inc. v. Springfield Township*, 78 F.Supp.2d 376, 389 (E.D.Pa.1999).

[11, 12] Disparate impact claims under the FHA are reviewed under the framework established for disparate treatment cases under Title VII. *Lapid-Laurel*, 284 F.3d at 466. First, a plaintiff must prove that defendants' policies have a greater adverse impact on persons with disabilities than on non-protected persons. If plaintiff demonstrates a prima facie case, then the burden shifts to the defendants to show that it had a legitimate, non-discriminatory reason for the action and that no less discriminatory alternatives were available. *Barber Center*, 273 F.Supp.2d at 655, citing *Lapid-Laurel*, 284 F.3d at 466–467.

[13] To demonstrate a violation of the FHA based upon a disparate impact theory, plaintiff may show an occurrence of outwardly neutral practices which have a significantly adverse or disproportionate impact on persons with disabilities. *Id.* at 655, citing *Lapid-Laurel*, 284 F.3d at 467. Once plaintiff meets its evidentiary burden, the burden shifts back to defendants to show that they have a legitimate non-discriminatory reason for their action and that no less discriminatory alternatives are available. *Id.*

Again, the Ordinance defines "family" use as:

> Either an individual, or two or more persons related by blood or marriage or adoption, or a group of not more than give persons not so related occupying a premises and living as a single housekeeping unit as distinguished from a group occupying a boarding house, lodging house, club, fraternity, or hotel. Household servants employed exclusively on the premises shall be considered part of the family of their employer.

Doc. No. 17, Appx. 246a.

Plaintiff has shown that while non-disabled persons would be able to enjoy a variety of living arrangements in Plum Borough, a single disabled person could not. Defendants' policies have created restrictions on the establishment of homes for individuals with disabilities in single-family neighborhoods and the burdens placed on those persons with disabilities (having to apply for conditional use permits, attend meetings and hire attorneys)

---

[5] Plaintiff's claim is also supported by controlling state court case law. In *Human Services Consultants, Inc. v. Zoning Hearing Board of Butler Township*, 137 Pa.Cmwlth. 594, 587 A.2d 40 (1991), the Commonwealth Court was presented with the question of whether an agency operated home for three persons with mental handicaps and staff was a "family" or an "institutional home." The Court ruled for the agency and stated that it was "convinced that the three residents and their staff constitute a 'family' as defined in the ordinance," and noted that the definition of "family" did not include "institutional homes" in its list of excluded group living arrangement. *Id.* at 597–598, 587 A.2d 40. Similarly, in this case, the definition of "family" does not exclude "group homes."

ounsel is to provide a defendant with a [r]eindictment private investigator").

Petitioner argues that the right to counsel is implicated here because restrictions were imposed on his liberty when he was required to post bail. But we have never suggested that the accused's right to the assistance of counsel "for his defence" entails a right to use counsel as a sword to contest pretrial detention. To the contrary, we have flatly rejected that notion, reasoning that a defendant's liberty interests are protected by other constitutional guarantees. See *id.*, at 190, 104 S.Ct. 2292 ("While the right to counsel exists to protect the accused during trial-type confrontations with the prosecutor, the speedy trial right exists primarily to protect an individual's liberty interest," including the interest in reducing the "'impairment of liberty imposed on an accused while released on bail'").

## IV

In sum, neither the original meaning of the Sixth Amendment right to counsel nor the precedents interpreting the scope of that right supports the Court's holding that the right attaches at an initial appearance before a magistrate. Because I would affirm the judgment below, I respectfully dissent.



EXXON SHIPPING COMPANY, et al., Petitioners,

v.

Grant BAKER et al.

No. 07-219.

Argued Feb. 27, 2008.

Decided June 25, 2008.

**Background:** After third remand for reconsideration of punitive damages in a suit arising from the 1989 grounding of an oil supertanker in Alaska, the United States District Court for the District of Alaska, H. Russel Holland, Chief Judge, 296 F.Supp.2d 1071, entered a $4.5 billion award of punitive damages against oil company, and parties filed cross-appeals. The United States Court of Appeals for the Ninth Circuit, 490 F.3d 1066, vacated and remanded for reduction of the punitive damages award to $2.5 billion, and certiorari was granted.

**Holdings:** The Supreme Court, Justice Souter, held that:

(1) for an equally divided court, defendant could be liable in punitive damages for reckless acts of its managerial employees;

(2) Clean Water Act's (CWA) penalties for water pollution did not preempt maritime common law on punitive damages; and

(3) maximum award of punitive damages allowed under maritime law was equal to jury's award of $507.5 million in compensatory damages.

Vacated and Remanded.

Justice Alito took no part in the consideration or decision of the case.

Justice Scalia filed a concurring opinion in which Justice Thomas joined.

Justice Stevens filed an opinion concurring in part and dissenting in part.

common law duties to refrain from injuring the bodies and livelihoods of private individuals. Federal Water Pollution Control Act, § 311, 33 U.S.C.A. § 1321.

1. Environmental Law ⚖171
   States ⚖18.31

Clean Water Act's (CWA) penalties on water pollution were not intended to occupy the entire field of pollution remedies. Federal Water Pollution Control Act, § 311, 33 U.S.C.A. § 1321.

2. Damages ⚖87(1)
   States ⚖18.15

Punitive damages for private harms would not have any frustrating effect on the Clean Water Act (CWA) remedial scheme, which would point to preemption. Federal Water Pollution Control Act, § 311, 33 U.S.C.A. § 1321.

3. Admiralty ⚖1.20(1)

Maritime law falls within a federal court's jurisdiction to decide in the manner of a common law court, subject to the authority of Congress to legislate otherwise if it disagrees with the judicial result. U.S.C.A. Const. Art. 3, § 2, cl. 1.

4. Damages ⚖87(1)

Consensus today is that punitive damages are aimed not at compensation but principally at retribution and deterring harmful conduct.

5. Damages ⚖91.5(1)

Prevailing rule in American courts limits punitive damages to cases where a defendant's conduct is outrageous, owing to gross negligence, willful, wanton, and reckless indifference for the rights of others, or behavior even more deplorable. Restatement (Second) of Torts § 908(2).

6. Damages ⚖91.5(1)

"Reckless conduct" supporting a punitive damages award is not intentional or malicious, nor is it necessarily callous toward the risk of harming others, as opposed to unheedful of it. Restatement (Second) of Torts § 500, Comment.

See publication Words and Phrases for other judicial constructions and definitions.

17. Damages ⚖91.5(1), 94.2

Action taken or omitted in order to augment profit represents an enhanced degree of punishable culpability, as does willful or malicious action taken with a purpose to injure. Restatement (Second) of Torts § 908.

*evidence pgs 7,8, complaint*

18. Damages ⚖94.2

Regardless of culpability, heavier punitive awards have been thought to be justifiable when wrongdoing is hard to detect.

19. Constitutional Law ⚖4427

Few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process; when compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee. U.S.C.A. Const. Amend. 14.

20. Damages ⚖94.1

A penalty should be reasonably predictable in its severity.

21. Damages ⚖87(1)

Punitive damages advance the interests of punishment and deterrence, which are also among the interests advanced by the criminal law. Restatement (Second) of Torts § 908, Comment.

22. Fines ⚖1.3

Excessive Fines Clause of the Eighth Amendment does not constrain an award of money damages in a civil suit when the government neither has prosecuted the ac-

*Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 437–438, n. 11, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001) (citing, *inter alia*, Note, Exemplary Damages in the Law of Torts, 70 Harv. L.Rev. 517 (1957)). But see Sebok, What Did Punitive Damages Do? 78 Chi.-Kent L.Rev. 163, 204 (2003) (arguing that "punitive damages have never served the compensatory function attributed to them by the Court in *Cooper*"). As the century progressed, and "the types of compensatory damages available to plaintiffs ... broadened," *Cooper Industries, supra*, at 437, n. 11, 121 S.Ct. 1678, the consequence was that American courts tended to speak of punitive damages as separate and distinct from compensatory damages, see, *e.g., Day, supra*, at 371 (punitive damages "hav[e] in view the enormity of [the] offence rather than the measure of compensation to the plaintiff"). See generally 1 L. Schlueter, Punitive Damages §§ 1.3(C)-(D), 1.4(A) (5th ed.2005) (hereinafter Schlueter) (describing the "almost total eclipse of the compensatory function" in the decades following the 1800s).

[14, 15] Regardless of the alternative rationales over the years, the consensus today is that punitives are aimed not at compensation but principally at retribution and deterring harmful conduct.[9] This

view," however, "was not widely shared." *Haslip, supra*, at 25, 111 S.Ct. 1032 (SCALIA, J., concurring in judgment) (citing other prominent 19th-century treatises). Whatever the actual importance of the subterfuge for compensation may have been, it declined.

See, *e.g., Moskovitz v. Mount Sinai Medical Center*, 69 Ohio St.3d 638, 651, 635 N.E.2d 331, 343 (1994) ("The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct"); *Hamilton Development Co. v. Broad Rock Club, Inc.*, 248 Va. 40, 45, 445 S.E.2d 140, 143 (1994) (same); *Loitz v. Remington Arms Co.*, 138 Ill.2d 404, 414, 150 Ill.Dec. 510, 563 N.E.2d 397, 401 (1990) (same); *Green Oil Co. v. Hornsby*, 539 So.2d 218, 222 (Ala.1989)

consensus informs the doctrine in most modern American jurisdictions, where juries are customarily instructed on twin goals of punitive awards. See, *e.g.*, Cal. Jury Instr., Civil, No. 14.72.2 (2008) ("You must now determine whether you should award punitive damages against defendant[s] ... for the sake of example and by way of punishment"); N.Y. Pattern Jury Instr., Civil, No. 2:278 (2007) ("The purpose of punitive damages is not to compensate the plaintiff but to punish the defendant ... and thereby to discourage the defendant ... from acting in a similar way in the future"). The prevailing rule in American courts also limits punitive damages to cases of what the Court in *Day, supra*, at 371, spoke of as "enormity," where a defendant's conduct is "outrageous," 4 Restatement § 908(2), owing to "gross negligence," "willful, wanton, and reckless indifference for the rights of others," or behavior even more deplorable, 1 Schlueter § 9.3(A).[10]

[16, 17] Under the umbrellas of punishment and its aim of deterrence, degrees of relative blameworthiness are apparent. Reckless conduct is not intentional or malicious, nor is it necessarily callous toward the risk of harming others, as opposed to unheedful of it. See, *e.g.*, 2 Restatement

(same); *Masaki v. General Motors Corp.*, 71 Haw. 1, 6, 780 P.2d 566, 570 (1989) (same); see also *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001) (punitive damages are "intended to punish the defendant and to deter future wrongdoing"); *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) ("[P]unitive damages ... are aimed at deterrence and retribution"); 4 Restatement § 908, Comment *a*.

10. These standards are from the torts context; different standards apply to other causes of action.

§ 500, Comment a, pp. 587–588 (1964) ("Recklessness may consist of either of two different types of conduct. In one the actor knows, or has reason to know ... of facts which create a high degree of risk of ... harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk. In the other the actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so"). Action taken or omitted in order to augment profit represents an enhanced degree of punishable culpability, as of course does willful or malicious action, taken with a purpose to injure. See 4 id., § 908, Comment e, p. 466 (1979) ("In determining the amount of punitive damages, ... the trier of fact can properly consider not merely the act itself but all the circumstances including the motives of the wrongdoer ..."); cf. Alaska Stat. § 09.17.020(g) (2006) (higher statutory limit applies where conduct was motivated by financial gain and its adverse consequences were known to the defendant); Ark.Code Ann. § 16-55-208(b) (2005) (statutory limit does not apply where the defendant intentionally pursued a course of conduct for the purpose of causing injury or damage).

[18] Regardless of culpability, however, heavier punitive awards have been thought to be justifiable when wrongdoing is hard to detect (increasing chances of getting away with it), see, e.g., *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 582, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) ("A higher ratio may also be justified in cases in which the injury is hard to detect"), or when the value of injury and the corresponding compensatory award are small (providing low incentives to sue), see, e.g., ibid. ("[L]ow awards of compensatory damages may properly support a higher ratio ... if, for example, a particularly egregious act has resulted in only a small amount of economic damages"); 4 Restatement § 908, Comment c, p. 465 ("Thus an award of nominal damages ... is enough to support a further award of punitive damages, when a tort ... is committed for an outrageous purpose, but no significant harm has resulted"). And, with a broadly analogous object, some regulatory schemes provide by statute for multiple recovery in order to induce private litigation to supplement official enforcement that might fall short if unaided. See, e.g., *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (discussing antitrust treble damages).

## C

State regulation of punitive damages varies. A few States award them rarely or not at all. Nebraska bars punitive damages entirely, on state constitutional grounds. See, e.g., *Distinctive Printing and Packaging Co. v. Cox*, 232 Neb. 846, 857, 443 N.W.2d 566, 574 (1989) (per curiam). Four others permit punitive damages only when authorized by statute: Louisiana, Massachusetts, and Washington as a matter of common law, and New Hampshire by statute codifying common law tradition. See *Ross v. Conoco*, 2002-0299, p. 14 (La.10/15/02), 828 So.2d 546, 555; *Flesner v. Technical Communications Corp.*, 410 Mass. 805, 813, 575 N.E.2d 1107, 1112 (1991); *Fisher Properties v. Arden-Mayfair, Inc.*, 106 Wash.2d 826, 852, 726 P.2d 8, 23 (1986); N.H.Rev. Stat. Ann. § 507:16 (1997); see also *Fay v. Parker*, 53 N.H. 342, 382 (1872). Michigan courts recognize only exemplary damages supportable as compensatory, rather than truly punitive, see *Peisner v. Detroit Free Press, Inc.*, 104 Mich.App. 59, 68, 304 N.W.2d 814, 817 (1981), while Connecticut courts have limited what they call punitive recovery to the "expenses of bringing the

*Handwritten annotations: rule 54; 28 USCA; 1364; p 383*

fied that he knew of the increased danger of "whipping" that could result from pulling a heavy load on the hilly terrain at the scene of the accident. There was also evidence that Edward had a view of the pickup in his rear view mirror, indicating that Edward was also aware of the swaying of the trailer. Most significant of all was the testimony of Mrs. Koslowsky. This witness testified that she had passed the two Dilworth vehicles shortly before the time of the accident, and that the second vehicle was swinging dangerously back and forth across the center line. Moreover, the accident occurred at night on a two-lane highway with no shoulder, giving Sheryl no opportunity to take evasive action. Her position was one of complete dependence on the responsibility of defendants to drive their vehicle in a safe manner and condition. *See Kindellan v. Arwood Material Co.*, 338 F.Supp. 1210 (E.D.Tenn.1972) (punitive damages appropriate for injuries caused by driving overloaded truck with inadequate brakes).

[5] The state of knowledge of each defendant at the time of the accident was also indicated by certain obfuscatory conduct of the defendants after the accident. Nathan accused one of the volunteer workers at the scene of the accident of being drunk, and his father Edward made the same accusation against all the officers investigating the accident as well as the driver of a vehicle who was unable to avoid a second collision with the pickup after it had come to rest on the highway. Edward also made numerous attempts to shift the blame for the accident to Sheryl Bergeson, including statements that Sheryl was either asleep or trying to commit suicide by crossing the center line. From this conduct the jury could properly infer that the Dilworths were attempting to conceal their knowledge of the danger existing at the time of the accident. *See Ettus v. Orkin Exterminating Co.*, 233 Kan. 555, 665 P.2d 730, syl. ¶ 12 (1983); Fed.R.Evid. 404(b).[1]

[6–10] Contrary to defendants' assertion, a plaintiff is not bound by the amount of relief requested in the complaint. *Menne v. Celotex Corp.*, 861 F.2d 1453, 1474 (10th Cir.1988); *Aggarwal v. Ponce School of Medicine*, 745 F.2d 723, 729 (1st Cir. 1984); *Stevens v. F/V Bonnie Doon*, 731 F.2d 1433, 1437 (9th Cir.1984); *Morton Buildings of Nebraska, Inc. v. Morton Buildings, Inc.*, 531 F.2d 910, 919 (8th Cir. 1976); *Gillespie v. Brewer*, 602 F.Supp. 218, 223 (N.D.W.V.1985); *see also* Fed.R. Civ.P. 54(c). If the evidence is sufficient to sustain an award higher than that requested in plaintiff's pleadings, the complaint is considered amended to conform to proof. *Kizziar v. Dollar*, 268 F.2d 914, 918 (10th Cir.1959). Defendants also bring to the court's attention the absence of any evidence as to the defendants' net worth. Kansas law permits but does not require that a plaintiff produce evidence of a defendant's financial condition in order to justify the size of a punitive damage award. *Folks*, 243 Kan. at 75, 755 P.2d at 1334. Nor is there any prescribed ratio of actual to punitive damages to which a given judgment must conform. *Id.* at 77, 755 P.2d at

---

1. The court realizes that Edward Dilworth's liability for actual and punitive damages was contingent upon proof of either plaintiff's partnership or "joint venture" theory. *Grimm v. Pallesen*, 215 Kan. 660, 527 P.2d 978 ¶ 1 (1974) (partnership); *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 596 P.2d 816 (1979) (joint venture). If plaintiff established an agency relationship under either theory, then both defendants would be liable for both punitive and compensatory damages as joint managing partners in a business enterprise. *Kline v. Multi-Media Cablevision, Inc.*, 233 Kan. 988, 666 P.2d 711, syl. ¶ 4 (1983); *Modern Air*, 226 Kan., 596 P.2d at syl. ¶ 4 (each member of joint venture acts as both principal and agent of his coadventurer); Pattern Instructions for Kansas 2d 7.08 (1977); *see also Sizemore v. Hall*, 148 Kan. 233, 238, 80 P.2d 1092 (1938) (indicating that under theory of "automobile joint venture," driver of second car may be liable for damage caused by first car if the very act of driving first car is negligence, and if second driver has some voice in deciding whether first car will be driven). The evidence indicated, however, that Edward also had actual knowledge of the dangerous condition of the trailer, and that Edward and Nathan were "actors in concert." *American Family Mutual Ins. Co. v. Grim*, 201 Kan. 340, 345, 440 P.2d 621 (1968); *Restatement (Second) of Torts* § 876 (1979). Thus, Edward's knowledge was also relevant to the issue of punitive damages.

1335; *Iola State Bank v. Bolan,* 235 Kan. 175, 193, 679 P.2d 720, 735 (1984). Before reducing the actual damages as required by statute,[2] the punitive damage award in this case was approximately 25% larger than the actual damage amount. After the statutory reduction, punitive exceed actual damages by 2 to 1. Considering all the relevant factors and the evidence as a whole, the court finds the punitive damage award to be reasonable. The condition of the trailer, the testimony of a disinterested eyewitness, and the admitted knowledge and subsequent conduct of defendants all indicate that defendants willfully and wantonly operated a moving hazard on a public highway in utter disregard for the consequences of their actions. Accordingly, the court will not disturb the jury's award.

[11] Defendants have also requested that they be allowed to deposit with the clerk a check from defendants' insurance carrier in the amount of their policy limit of $200,000.00. The court construes this as a motion to deposit funds with the court pursuant to Fed.R.Civ.P. 67. Counsel has informed the court that defendants do not intend to move for a stay of execution pending appeal at this time. Until defendants do make such a motion, the court will not grant defendants leave to deposit any funds with the court. Thus, the court will deny defendants' motion. For purposes of any future deposits with the court that defendants may intend to make pursuant to a motion under Fed.R.Civ.P. 62, the court directs counsel's attention to D.Kan.Rule 126. Any terms or conditions that defendants may seek to impose upon any future security would of course be ineffective to alter their judgment obligations. *See Burghart v. Frisch's Restaurants, Inc.,* 865 F.2d 1162 (10th Cir.1989).

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for remittitur of punitive damages be denied.

IT IS FURTHER ORDERED that defendants' motion for leave to deposit funds with the court be denied.



Margaret L. POTTORF, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 88-4230-R.

United States District Court, D. Kansas.

May 31, 1990.

Action was brought alleging that Government wrongfully levied on property in that property did not belong to corporation and joint tenant that federal tax liens had been imposed against, but belonged to shareholder-co-owner. On Government's motion for summary judgment, the District Court, Rogers, J., held that: (1) levy issued on corporate taxpayer subject to federal tax lien to collect from proceeds of condemnation of land titled in corporation's name might be wrongful, and (2) whether federal tax lien against one of two persons who held property in joint tenancy with right of survivorship attached to entire amount of condemnation proceeds for property was mooted, upon death of co-owner not subject to lien.

Motion granted in part and denied in part.

1. Federal Civil Procedure ⚖=2543

In considering defendant's motion for summary judgment, court must examine all evidence in light most favorable to plaintiff.

---

2. The actual damage award consisted of $100,221.50 under plaintiff's survival action, together with $56,573.83 pecuniary and $250,000.00 non-pecuniary damages under the wrongful death claim. Pursuant to the statutory limit imposed by K.S.A. § 60-1903(a) (Supp.1989), the court reduced the non-pecuniary damages by $150,000.00.